UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60139-CR-WPD

**UNITED STATES OF AMERICA**

vs.

**DAMION MCKENZIE,**

    **Defendant.**

_____/

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

    The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Damion McKenzie (the "Defendant"). The Defendant is presently set for sentencing before the Court on January 21, 2022 for his conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 1349, two counts of bank fraud, in violation of Title 18, United States Code, Section 1344, and four counts of wire fraud, in violation of Title 18, United States Code, Section 1343. The offense stems from the Defendant's application for a fraudulent Paycheck Protection Program ("PPP") loan of $235,727 on behalf of his company, Five Plus Investment Group LLC ("Five Plus"), and $4,404,703 in fraudulent loans sought through other conspirators that the Defendant referred to the scheme, for a total intended loss of $4,640,430.

    For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 46 months, to be followed by three years of supervised release.[1]  A sentence of 46 months' imprisonment represents the bottom of the

---

[1] The United States is also seeking forfeiture of $360,000 and restitution. The Defendant is also required to pay a special assessment of $700.

applicable range of the United States Sentencing Guidelines (the "Guidelines") as calculated by the United States Probation Office ("Probation") in the final Presentence Investigation Report, disclosed December 10, 2021 [ECF No. 108] (the "PSR"), to which the government has no objection. Furthermore, the sentence recommended herein by the United States will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I.  FACTUAL BACKGROUND

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and his co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with James Stote, Keyaira Bostic, and others. The Defendant attempted to obtain a fraudulent PPP loan for his own company, Five Plus, with Stote providing falsified documents and submitting the application on the Defendant's behalf. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

### A.  The CARES Act

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP

funding. These funds were designed to address the unprecedented crisis facing Americans—especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need. To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal, and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.    Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Indictment [ECF No. 17], and the PSR [ECF No. 108].

Beginning in May 2020 through in or around at least August 2020, the Defendant conspired with Stote, Bostic, and others to obtain by fraud a PPP loan on behalf of Five Plus, a Florida limited liability company for which the defendant is a manager.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of Five Plus that the Defendant knew contained materially false and fraudulent representations, including both the number of employees that Five Plus had during each quarter of 2019 and the amount of wages paid by Five Plus during each quarter of 2019. Specifically, on May 16, 2020, Stote submitted at the Defendant's request four (4) signed and

3

dated Internal Revenue Service ("IRS") Forms 941 (titled, "Employer's Quarterly Federal Tax Returns"), that is, one for each quarter of 2019 (collectively, the "Forms 941"), each of which falsely represented that Five Plus had 13 employees during each quarter of 2019.

In addition to the Forms 941, Stote submitted, at the Defendant's request, an electronically signed PPP loan application form on behalf of Five Plus, which falsely represented that Five Plus had 13 employees and an average monthly payroll of $94,291. Bank Processor 1 rejected a PPP loan for Five Plus.

Meanwhile, the Defendant referred other associates to Stote for the purpose of obtaining fraudulent PPP loans and with the expectation of receiving a kickback of the fraudulently obtained loan proceeds. Investigators identified approximately 12 fraudulent loans seeking approximately $4,404,703 that came from McKenzie's referrals. Of those, approximately five were approved and $1,816,042 in PPP loan funds were paid out. Investigators have also identified $360,000 in payments that the Defendant subsequently received from his referrals. [ECF No. 107 at 20-21].

## II.   PROCEDURAL HISTORY

On December 8, 2020, the Defendant was charged by indictment with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344 [ECF No. 17]. The Defendant pleaded guilty to the Indictment on October 8, 2021 [ECF No. 47]. Sentencing is presently scheduled for January 21, 2022.

### III.     SENTENCING GUIDELINES CALCULATIONS

#### A.     The Government Agrees with the Defendant's Objection as to Role but not as to the Third Point for Acceptance of Responsibility

As set forth in the PSR, Probation computes the Total Offense Level at 26 (PSR ¶¶ 46-54). At Criminal History Category I, this produces an advisory Guidelines range of 63-78 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines. The Defendant, however, has two objections to this calculation.

First, the Defendant objects to the application of an enhancement for defendant being a supervisor or manager and the resulting increase of three levels pursuant to Section 3B1.1(b). [ECF No. 99]. The United States agrees that the Defendant did not serve as a supervisor or manager in this scheme, consistent with the position of similarly situated defendants who referred other associates to the leaders of the scheme. *See, e.g.*, *United States v. Clark*, Case No. 21-CR-60029 (S.D. Fla.).

Second, the Defendant suggests that the government recommend a third acceptance point despite his refusal to plead guilty until the eve of trial, i.e., the Calendar Call hearing. In support, the Defendant claims that his belated decision to plead guilty was due to the government's supplemental discovery productions prior to trial, particularly an interview report with the mother of his children (Tiara Walker). [ECF No. 99 at 3-4]. The Defendant, however, erroneously characterizes the government's production of discovery.

As part of trial preparation, the government continued to obtain and timely produced discovery material to the Defendant. For instance, the government interviewed various potential witnesses as part of its trial preparation in September and October 2021 and produced resulting interview reports. This included co-conspirator Tiara Walker, who the government interviewed

for the first time in September 2021.  The government also worked extensively with defense counsel (and with counsel for his co-defendant, Keyaira Bostic), to resolve any difficulties in accessing certain electronic discovery and, when necessary, re-produced discovery to facilitate their review.  In other words, much of the discovery that the Defendant claims entitles him to a third reduction point (e.g., the interview report of Tiara Walker) was created as a direct result of his own insistence on going to trial.

In short, the Defendant has not demonstrated (or even attempted to demonstrate) how he has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." *See* Section 3E1.1(b).  To the contrary, the government prepared substantially for the trial of the Defendant's case.

The United States therefore submits that the Offense Level computation is as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(2) | 7 |
| Loss greater than $3,500,000 but less than $9,500,000, § 2B1.1(b)(1)(J) | 18 |
| Acceptance of Responsibility § 3E1.1(a) | (2) |
| **Total Offense Level** | **23** |

At Criminal History Category I, this produces an advisory Guidelines range of 46-57 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines.

### IV.   CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court

shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States.

  A.  **Nature and Circumstances of the Offense**

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting a false application claiming to have employees and payroll that did not exist. The Defendant then referred a dozen other people to do the same for which he received at least $360,000. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range. The United States' recommended sentence at the bottom of the Guidelines range is sufficient but not greater than necessary to accomplish this goal.

  B.  **History and Characteristics of the Defendant**

The Defendant is a 39-year-old man who is a manager of Five Plus, which was incorporated in 2018. [ECF No. 108 at ¶ 22]. Since 2015, the Defendant has been employed as a general manager of G5ive, an adult entertainment establishment located in North Miami Beach. (*Id.* ¶ 85). The Defendant is not married and has six children. (*Id.* ¶¶ 70-71). Although the Defendant has a Criminal History Category of I, the PSR reflects that he previously pleaded guilty and was sentenced (to withholds of adjudication and probation) for two separate offenses involving fraud. (*Id.* ¶¶ 56-57). In 2003, the Defendant fraudulently used the personal information of a victim to obtain lines of credit, purchase luxury items such as jewelry, and to purchase automobiles. (*Id.* ¶ 56). Then in 2011, the Defendant again used the personal information of a victim to make

7

thousands of dollars' worth of fraudulent charges. (*Id.* ¶ 57).  In short, because the instant case also involved fraud, it is the government's position that the Defendant's criminal history supports a sentence within the guidelines, albeit at the low end of the guideline range.

      **C.**      **Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant**

The sentence in this case should address a need for both general and specific deterrence. As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014).  As explained above, this case was motivated by greed at a time when millions of Americans were suffering from the economic impact of a global pandemic.  As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance—especially in the Southern District of Florida.  The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence.  Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs.  Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it.  The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence within the Guidelines is sufficient to protect the public from future crimes of this Defendant.  As stated above, the Defendant committed fraud in the past and both times received non-incarceration sentences. Given the Defendant's conduct in this case, it would appear that those prior sentences did not deter him from continuing to commit fraud. If anything,

the Defendant's fraudulent conduct has escalated, resulting in a larger loss amount and the recruitment by the Defendant of others into his fraudulent scheme.

**D.     Need for the Sentence to Avoid Unwarranted Sentencing Disparities**

The sentence recommended by the United States will not create an unwarranted sentencing disparity.  There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case.  Judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment for offenses related to PPP fraud.  *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

Ten other conspirators in this scheme have been sentenced, seven of whom have been sentenced to terms of imprisonment within the applicable Guidelines range.  On December 10, 2021, the court sentenced co-conspirator Joshua Bellamy to 37 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Bellamy*, Case No. 21-cr-60064-RKA (S.D. Fla.).  On December 9, 2021, the court sentenced co-conspirator Yashica Bain to 24 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture.  *United States v. Bain*, Case No. 21-cr-60200-DMM (S.D. Fla.).  On

December 3, 2021, the court sentenced co-conspirator Jericca Rosado to 37 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Rosado*, Case No. 21-cr-60211-JEM (S.D. Fla.).  Each of these sentences was at the bottom of the applicable Guidelines range.

On October 18, 2021, the court sentenced co-conspirator Devonte Thames to 31 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Thames*, Case No. 21-cr-60125-RKA (S.D. Fla.).  The sentence was at the bottom of the adjusted Guidelines range after the court granted the government's motion, pursuant to Section 5K1.1, and reduced Thames' sentence by approximately 33%.  Meanwhile, on October 13, 2021, the court sentenced co-conspirator Dennes Garcia to 18 months imprisonment – which was at the bottom of the Guidelines range – three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Garcia*, Case No. 21-cr-60146 (S.D. Fla.).

In addition, on July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla.).  On July 27, 2021, co-conspirator Tonye Johnson was sentenced by the court to 18 months in prison, three years of supervised release, and was ordered to pay restitution and forfeiture. *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.).  On September 24, 2021, the court sentenced Brian Arnold to time served, three years of supervised release, including one year of home confinement, 600 hours of community service, and ordered him to pay restitution and forfeiture. *United States v. Arnold*, No. 21-CR-20331-BB (S.D. Fla.).  Unlike defendants Smith, Thames, Walker, and Johnson, the proceeds for Defendant Arnold's fraudulent PPP loan were immediately frozen before he could

pay any kickbacks or otherwise spend the funds. On October 8, 2021, the court sentenced Cindi Denton to six months imprisonment, three years of supervised release, including one year of home confinement, and ordered her to pay restitution and forfeiture. *United States v. Denton*, No. 21-CR-60171 (S.D. Fla.). Defendants Walker, Johnson, Arnold, and Denton had no criminal history points; they each sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.[2]

On July 30, 2021, the court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Clark*, Case No. 21-CR-60029-WPD (S.D. Fla.). Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history. Defendant Clark's sentence was at the bottom of the Guidelines as calculated by the Court, after the Court held that a two-level minor role reduction was warranted because Clark ultimately received very little from the scheme, so his Guidelines loss amount greatly exceeded his personal gain.[3] Defendant McKenzie argues for a similar reduction here. [ECF No. 99 at 4]. The government submits that such a reduction is not warranted here because, unlike Clark, the Defendant obtained a substantial sum of the fraudulent loan proceeds, $360,000 (approximately 20% of the amount of the loans he referred that were approved and funded), and unlike defendant Clark, those funds were not immediately frozen.

---

[2] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

[3] Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000. However, Clark ultimately received little money from the scheme, which the Court found to be a significant factor at sentencing.

The intended loss amount of $4,640,430 attributable to the Defendant is an important measure of his relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $35 million in intended losses.  That is, the co-conspirators who led and organized the scheme in this case and were involved in preparing or submitting even more fraudulent loan applications will be responsible for  greater intended loss amounts, and a correspondingly higher advisory Guidelines range under Section 2B1.1.  A sentence of 46 months for this Defendant, who is being held responsible only for the loss associated with his fraudulent loan and those he referred to the scheme, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible.

V.   **RESTITUTION & FORFEITURE**

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1).  The government is seeking restitution in the amount of $1,816,042. Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases:  *United States v. Stote, et al.*, 21-CR-00805-PAB (N.D. Ohio); *United States v. Williams*, 21-CR-806-PAB (N.D. Ohio); United *States v. Bostic*, 20-60139 (S.D. Fla.); and *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla.).

Furthermore, United States seeks a forfeiture money judgment in the amount of $360,000.

\*          \*          \*

### CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of forty-six (46) months, to be followed by a

term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment.

Respectfully Submitted,

| JUAN ANTONIO GONZALEZ | JOSEPH S. BEEMSTERBOER |
| UNITED STATES ATTORNEY | ACTING CHIEF, FRAUD SECTION |

By: /s/ *David S. Turken*  
DAVID TURKEN  
Assistant United States Attorney  
Florida Bar No. 28573  
99 NE 4TH Street  
Miami, FL 33132-2111  
Tel.: (305) 961-9430  
Fax: (305) 530-7976  
Email: david.turken@usdoj.gov

By: /s/ *Philip B. Trout*  
PHILIP B. TROUT  
Trial Attorney, Fraud Section  
U.S. Department of Justice  
1400 New York Ave NW  
Washington, DC 20530  
Tel: (202) 616-6989  
Fax: (202) 514-3708  
Email: philip.trout@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 18, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

>                                     */s/ David S. Turken*
>                                     Assistant United States Attorney